1

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9

10

11

12

13

14

15

16

17

18

19

20

21

| | |
|---|---|
| ACE BUSINESS SOLUTIONS, LLC,<br><br>                                    Plaintiff,<br><br>vs.<br><br>GLOBAL MARKETING &<br>DEVELOPMENT, INC., and<br>AWESOME ENTERPRISES, LLC,<br><br>                                    Defendants.<br>——————————————————<br>GLOBAL MARKETING &<br>DEVELOPMENT, INC.,<br><br>                                    Counterclaimant,<br><br>vs.<br><br>ACE BUSINESS SOLUTIONS, LLC,<br><br>                                    Counter-Defendant. | Case No. 15cv1464-MMA (NLS)<br><br>**ORDER DENYING MOTION TO<br>INTERVENE**<br><br>[Doc. No. 21] |

22

23          Third parties TDL Global Ventures ("TDL") and Losany Enterprises, LLC

24   ("Losany") (collectively, "the Intervenors") move to intervene in this action pursuant to

25   Federal Rule of Civil Procedure 24.  [Doc. No. 21.]  The Court found the matter suitable

26   for determination on the papers and without oral argument pursuant to Civil Local Rule

27

1  7.1(d)(1).  For the reasons set forth below, the Court **DENIES** TDL's and Losany's

2  motion to intervene.

3                                    <u>**BACKGROUND**</u>

4         On July 2, 2015, Plaintiff Ace Business Solutions, LLC ("Ace") filed this

5  interpleader action pursuant to 28 U.S.C. § 1335.  [Doc. No. 1.]  Plaintiff requests the

6  Court determine, as between Defendants Global Marketing & Development, Inc.

7  ("GMD") and Awesome Enterprises, LLC ("Awesome"), the rights to a particular sum of

8  money ("Net Distribution") that Plaintiff has collected.  Plaintiff Ace is a debt processing

9  company that provides processing services for GMD pursuant to an agreement between

10  the two entities.  [Doc. Nos. 1, 24.]  Ace, as part of its services, collects payments from

11  consumers and pays portions of those funds to GMD.  Plaintiff also used to provide

12  processing services to a company called 5STAR, Inc. ("5STAR"), which was originally

13  owned by Awesome.  [*See* Doc. Nos. 1, 21.]  At some point,[1] GMD acquired 5STAR and

14  thereby acquired 5STAR's servicing obligations.  [*See* Doc. Nos. 1, 21.]  Awesome

15  disputes the propriety of this transaction and as a result, Awesome and GMD allegedly

16  began to give Ace conflicting instructions regarding to whom Ace should distribute

17  collected funds.

18         Specifically, on June 17, 2015, Ace alleges it received notice from attorneys who

19  represent organizations[2] that were previously affiliated with 5STAR, who asserted there

20  were certain "improprieties related to the transfer of ownership of 5STAR to GMD

21  and/or parties affiliated with GMD," which affected GMD's entitlement to funds that Ace

22  would typically transfer to GMD.  On June 26, 2015, Plaintiff received notice from GMD

23  requesting Plaintiff transfer to it the entire Net Distribution.  Awesome claims a portion

24  of the Net Distribution, and asserts GMD is entitled to none of it because GMD

25

26  ───────────────
[1] The particular facts surrounding 5STAR's relationship to Awesome are unclear, but it appears that at this time, Awesome was still affiliated with 5STAR.

27  [2] The Complaint indicates that Awesome was one of these organizations.  [*See* Doc. No. 1, ¶ 20.]

1  committed fraud and "misappropriate[d] companies and assets belonging to Awesome

2  and businesses related to Awesome, [and] the revenue from debt invalidations businesses

3  belonging to businesses related to Awesome."  [Doc. No. 26.]

4       Both GMD and Ace have filed counterclaims against one another regarding the

5  agreement between them.  [Doc. Nos. 9, 16.]  GMD has filed a counterclaim against Ace

6  alleging breach of contract and conversion.  Ace has filed a counterclaim against GMD

7  asserting claims for breach of contract and the covenant of good faith and fair dealing.

8                                    <u>LEGAL STANDARD</u>

9       Federal Rule of Civil Procedure 24 governs motions to intervene in federal court.

10  Rule 24 states that a court must, upon a timely motion, allow intervention of right where

11  the movant:

12

13          (1) is given an unconditional right to intervene by a federal
            statute; or (2) claims an interest relating to the property or
14          transaction that is the subject of the action, and is so situated
            that disposing of the action may as a practical matter impair or
15          impede the movant's ability to protect its interest, unless
            existing parties adequately represent that interest.
16

17

18  Fed. R. Civ. P. 24(a).  The Ninth Circuit has interpreted Rule 24(a) as requiring an

19  applicant meet all of the following four factors:

20

21          (1) the application for intervention must be timely; (2) the
            applicant must have a 'significant protectable' interest relating
22          to the property or transaction that is the subject of the action;
            (3) the applicant must be so situated that the disposition of the
23          action may, as a practical matter, impair or impede the
            applicant's ability to protect that interest; and (4) the applicant's
24          interest must not be adequately represented by the existing
            parties in the lawsuit.
25

26

27

1    *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003), as amended (May 13, 2003);

2    *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 817–18 (9th Cir. 2001);

3    *C.S. ex rel. Struble v. California Dep't of Educ.*, No. 08-CV-0226-W(AJB), 2008 WL

4    962159, at *2 (S.D. Cal. Apr. 8, 2008).  An applicant has a significant protectable interest

5    where its interest is protected under some law, and there is a relationship between its

6    legally protected interest and the plaintiff's claims.  *Donnelly v. Glickman*, 159 F.3d 405,

7    409 (9th Cir. 1998).  The resolution of the plaintiff's claims must actually affect the

8    applicant, but if there would be a substantial effect, the applicant "should, as a general

9    rule, be entitled to intervene."  *Id.*; *Southwest Center for Biological Diversity v. Berg*, 268

10   F.3d 810, 822 (9th Cir. 2001).

11        In the alternative, courts may allow permissive intervention under Rule 24(b).  The

12   court may allow anyone to permissively intervene who:

13

14        (A) is given a conditional right to intervene by a federal statute;
          or (B) has a claim or defense that shares with the main action a

15        common question of law or fact. [. . .] (3) Delay or Prejudice. In
          exercising its discretion, the court must consider whether the

16        intervention will unduly delay or prejudice the adjudication of

17        the original parties' rights.

18

19   Fed. R. Civ. P. 24(b).  Further, a party seeking to permissively intervene must establish

20   that their motion was timely and that the court has an independent jurisdictional basis for

21   the party's claims.  *See C.S. ex rel. Struble*, 2008 WL 962159 at *2.

22                                    <u>DISCUSSION</u>

23   **A.    TDL's and Losany's Grounds for Intervention**

24        TDL and Losany move to intervene as of right, or in the alternative, seek

25   permissive intervention.  TDL asserts that, based on a written agreement between TDL

26   and GMD, it is entitled to 25% of the money that GMD would receive as a result of this

27

1   interpleader action.  Specifically, on March 8, 2015, TDL and GMD entered into a

2   contract concerning services TDL would provide to GMD and the payment TDL would

3   receive in exchange.  [Doc. No. 21.]  Under the contract, TDL obtained a 25% ownership

4   in GMD.  TDL alleges GMD has "disavowed [this agreement] altogether," which has

5   prompted TDL to sue GMD in Maryland District Court.[3]  TDL asserts that if it wins its

6   case in the Maryland District Court, it would be entitled to 25% of the funds at issue in

7   this case.

8          Losany claims it is entitled to between 7.5–14% of the money due to Awesome,

9   depending on the source of the funds.  In July 2011, a company called Another

10   Beginning, Inc. ("ABI") entered into an agreement with a debt validation operation called

11   Debt Defense Services ("DDS") whereby ABI was to receive 30% of DDS's revenue.

12   DDS sold debt modification paperwork.  The owners of DDS then organized Awesome.

13   [Doc. No. 21.]  ABI had been receiving portions of the income of companies that

14   Awesome eventually purportedly sold to GMD, i.e., in the sale at issue in this

15   interpleader action.  In 2013, the owner of ABI started Losany and "folded all of ABI's

16   commission rights into Losany, including all commission rights under the ABI/DDS

17   Agreement."  [Doc. No. 21.]  In March 2014, "the commissions due to ABI under the

18   ABI/DDS Agreement were assigned to Losany and it received all of the revenue from the

19   ABI/DDS Agreement . . . until the alleged purchase by GMD and the dispute between

20   GMD and Awesome arose."  [Doc. No. 21.]

21          **B.     Plaintiff Ace's and Defendant GMD's Arguments in Opposition**

22          Ace and GMD oppose the motion to intervene.  [*See* Doc. Nos. 24, 25.]  Awesome

23   did not file a response.

24   //

25   //

26

27   [3] Losany is also a plaintiff in the pending Maryland District Court case, Case No. 15CV1738-GLR.  Awesome is not a party to that case.

### i.      Ace's Arguments

Ace argues that neither TDL nor Losany meet the requirements to intervene as a matter of right because neither have a protectable interest in the interpleader action. Neither TDL nor Losany are parties to, or have a legally recognized interest in the agreement between Ace and GMD that is at issue here.  To the extent that TDL and Losany have any stake in the outcome of this proceeding, it is an artifact of their independent and unrelated contractual relationships with Awesome and GMD.  The Intervenors merely claim money from the claimants in this action.  If successful in the lawsuit pending in Maryland, the Intervenors may obtain a judgment against GMD and attach its assets.  Ace argues that the Intervenors are not yet judgment creditors, and even judgment creditors do not have the right to intervene in lawsuits in order to ensure a judgment will be satisfied.

Further, Ace argues that even if the Court were to find this action affects the Intervenors, their interests are not impaired because there are other means by which the Intervenors can protect their interests, such as a prejudgment writ of attachment or lien. Moreover, if the Court finds the Intervenors do have a legally protectable interest in this action, their interests are adequately protected.  GMD and Awesome will each advocate for as large of a portion of the Net Distribution as they can obtain.

As for permissive intervention, Ace argues that the Intervenors have not articulated any common question of law or fact that they share with the parties to this action.  The interpleader pertains to the agreement between Ace and GMD, but the basis for TDL's intervention is an agreement between TDL and GMD.  Losany's basis for intervention arises from the assignment of commissions due to ABI under the ABI/DDS contract. Ace argues it would not be judicially economical to adjudicate all of these disputes in the same action, especially considering the pending Maryland litigation.

Lastly, Ace contends that it would suffer prejudice if the Intervenors are allowed to intervene as parties.  Ace would be required to participate in discovery on issues that Ace

1  has no interest in, such as issues pertaining to Losany's contract with GMD and TDL's

2  assignment.  Ace argues that the addition of the issues surrounding these new potential

3  parties and other agreements would increase Ace's costs and delay the litigation.

4             **ii.     GMD's Arguments**

5        GMD reiterates that neither TDL nor Losany are parties to the agreement between

6  GMD and Ace, which is at the heart of the interpleader action, and that the Intervenors

7  are already involved in pending litigation in Maryland regarding their relationship with

8  GMD.  GMD argues that intervention would be inappropriate and premature, and that

9  TDL and Losany should seek a writ of attachment if and when they prevail against GMD

10  in the Maryland lawsuit.  GMD argues that the Intervenors have not indicated why

11  intervention would be efficient here.  Further, GMD notes that Todd Lubar, whose

12  declaration Intervenors submitted in support of their motion, stated he is uncertain as to

13  whether GMD has other income or assets it could put toward satisfying a potential

14  judgment resulting from the Maryland litigation.  Accordingly, GMD argues, the

15  Intervenors' interest in this action is speculative.  GMD concludes that, for those reasons,

16  the Intervenors are not entitled to intervention as of right or permissive intervention.

17       **C.     Analysis[4]**

18             **i.     Intervention of Right**

19        The Intervenors have not pointed the Court to any federal statute that mandates

20  their intervention into this action.  *See* Fed. R. Civ. P 24(a)(1).  Thus, to intervene as of

21  right, the Intervenors must show they have a significant protectable interest related to the

22  property or transaction underlying the litigation, and are "so situated that disposing of the

23  action may as a practical matter impair or impede [their] ability to protect [their] interest,

24  unless existing parties adequately represent [those] interest[s]."  Fed. R. Civ. P. 24(a)(2).

25  The Intervenors have not done so.

26  ───────────────────

27  [4] Although both intervention of right and permissive intervention require a timely motion by the applicant, the timeliness of
the Intervenors' motions is not at issue here.  For that reason, the Court need not address timeliness.

1    To have a significant protectable interest, a movant's interest must itself be

2 affected by the resolution of the litigation.  Based on the facts presented to the Court, the

3 Intervenors' interests are entirely derivative of Defendants' claims in this action, and are

4 wholly based on contracts not at issue here.  Thus, the validity of the Intervenors' rights

5 to some portion of funds that Defendants' will potentially recover as a result of this

6 litigation will not be affected by the Court's determination of Defendants' rights to the

7 Net Distribution.  Accordingly, while the Intervenors may have contractual rights under

8 contracts outside the scope of this litigation which are protected by law, the Intervenors

9 have not shown that "there is a relationship between [those rights] and the claims at

10 issue" here.  *See Donnelly*, 159 F.3d at 409; *Arakaki v. Cayetano*, 324 F.3d 1078, 1084

11 (9th Cir. 2003), as amended (May 13, 2003).  Moreover, the Intervenors do not claim to

12 be third-party beneficiaries of the GMD/Ace contract, which would potentially render

13 their interests related to the claims at issue in this interpleader action.  *See Hook v. State*

14 *of Arizona*, 972 F.2d 1012, 1015 (9th Cir. 1992).

15    The Intervenors' circumstances are comparable to those of potential judgment

16 creditors.  Courts have found that an impaired ability to collect on potential future

17 judgments does not amount to a legally protectable interest.  *See U.S. v. Alisal Water*

18 *Corp.*, 370 F.3d 915, 920 (9th Cir. 2004) (holding an "interest in the prospective

19 collectability of [a] debt [. . .] [was] not sufficiently related" to the action because the

20 interest was "several degrees removed" from the policies at issue).  The Ninth Circuit has

21 stated that holding otherwise would "create an open invitation for virtually any creditor

22 of a defendant to intervene in a lawsuit where damages might be awarded."  *Id.*  Further,

23 where potential financial loss is merely speculative or amounts to a bare expectation of

24 economic recovery, courts have found applicants have no legally protectable interest.

25 *Portland Audubon Soc'y v. Hodel*, 866 F.2d 302, 309 (9th Cir. 1989); *Medical Protective*

26 *Co. v. Pang*, 2006 WL 1544192 at *4 (D. Ariz. June 1, 2006).

27

1    Here, the Intervenors' interests are both speculative and similar to potential

2 judgment creditors' interests because, by the Intervenors' own admissions, they are only

3 entitled to a portion of the money, if any, which may be due to Defendants, depending on

4 the outcome of this interpleader action.  The Intervenors have not yet been denied funds

5 they claim they will be owed.  Further, TDL states that it is only due money if it prevails

6 in its litigation against GMD in Maryland.  *See Pang*, 2006 WL 1544192 at *4 (finding

7 no substantial protectable interest where the "economic interest [was] based upon an

8 uncertain expectation [of a future judgment]," and "[b]ecause [the applicant] [did] not

9 currently hold a judgment against Dr. Pang, her interest [was] not only purely economic,

10 but also theoretical").

11    Lastly, Ace argues that the Intervenors have not shown that their claimed interests

12 would not be adequately protected by Defendants.  The Intervenors' interests appear to be

13 essentially the same as GMD's and Awesome's interests.  GMD has an interest in

14 obtaining as much money as possible, thereby indirectly increasing the net gain TDL

15 would enjoy based on its 25% interest it may have in GMD's recovery.  Losany's interest

16 likewise comports with Awesome's.  Awesome wishes to obtain the maximum portion of

17 the Net Distribution, increasing Losany's derivative portion.  There is no indication that

18 either of the defendants plan to seek smaller amounts than they believe they are entitled

19 to in order to minimize the amounts they would be potentially required to pay either of

20 the Intervenors.

21    For the foregoing reasons, the Intervenors do not have significant protectable

22 interests that are at risk of being impaired or impeded by the resolution of this action, and

23 which would not already be adequately protected.  Therefore, the Intervenors are not

24 entitled to intervene as a matter of right in this action.

25    **ii.    Permissive Intervention**

26    TDL and Losany do not claim to have a conditional right to intervene under a

27 federal statute.  *See* Fed. R. Civ. P. 24(b).  Accordingly, the Intervenors must show they

1   have a claim or defense that shares a common question of law or fact with this action. *Id.*

2   Also, the Court is required to determine whether intervention would unduly delay or

3   prejudice the adjudication of the current parties' rights. *Id.*  In the Intervenors' reply

4   brief, they contend that the common question they share with the parties is "who is

5   entitled to receive what portion of the interplead funds and any future processed funds by

6   Ace."  [Doc. No. 27.]

7          However, such a question is well beyond the scope of this interpleader action.  Ace

8   has only requested this Court determine, as between Defendants Awesome and GMD

9   only, who is entitled to the interpleaded funds.[5]  Ace has not requested the Court

10  determine whether Defendants owe anyone else money based on other contracts

11  Defendants are parties to—contracts that have no bearing on Defendants' claims to the

12  Net Distribution.  Similarly, Ace has not requested the Court determine who has rights to

13  "any future processed funds by Ace."

14         Further, elsewhere in their briefing, the Intervenors frame their claims much more

15  narrowly.  For example, in their motion, the Intervenors state they "seek to intervene in

16  the complaint to protect their interest in the monies being interpled by Ace and to ensure

17  that the judicial determination reach concerning the distribution of the monies includes

18  their interests."  [Doc. No. 21.]  However, as discussed, the Intervenors' interests arise

19  out of contracts with the claimants that are not at issue in the underlying dispute.

20  Accordingly, based on the facts presented to the Court, the Intervenors' claims regarding

21  rights they have to money Defendants will potentially obtain as a result of this action

22  share no common questions of law or fact with the underlying action.

23         Lastly, GMD and Ace argue that intervention will unduly delay or prejudice the

24  adjudication of their rights.  The Court agrees.  To allow intervention would be to

25

26  _____
    [5] TDL and Losany indicate they understand the limited nature of Ace's action.  They state, "Ace [has interpleaded] the
    monies and seek[s] a judicial determination from this Court as to what portion of the monies, if any, is due to GMD and what
27  portion, if any, is due to Awesome."  [Doc. No. 21.]

1   significantly increase the scope of this litigation, undoubtedly delaying the resolution of

2   this case.  Intervention would result in the addition of two parties and a multitude of

3   issues, such as the issues surrounding the ABI/DDS contract and the GMD/TDL contract,

4   the validity of which is disputed.  Further, allowing intervention has a significant risk of

5   prejudicing the parties because the validity of the GMD/TDL contract is currently being

6   litigated in Maryland.  Thus, GMD would be put at risk of inconsistent judgments if the

7   same issues are adjudicated in two different courts.

8         Accordingly, the Court finds no basis to allow the Intervenors to permissively

9   intervene.

10                                 **CONCLUSION**

11         For the foregoing reasons, the Court **DENIES** the Intervenors' motion to intervene.

12   [Doc. No. 21.]

13         **IT IS SO ORDERED.**

14

15   Dated:  April 14, 2016

16

17                                     Hon. Michael M. Anello
                                         United States District Judge

18

19

20

21

22

23

24

25

26

27