1   MATTHEW C. ELSTEIN  (SBN 174400)
    melstein@tresslerllp.com
2   TRESSLER LLP
    1901 Avenue of the Stars, Suite 450
3   Los Angeles, CA 90067
    Telephone: (310) 230-4800
4   Facsimile:  (310) 230-4850

5   Attorneys for Defendant, Defendant-in-Intervention, Counterclaimant and Third
    Party Plaintiff AWESOME ENTERPRISES, LLC
6

7                  **UNITED STATES DISTRICT COURT**

8           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 9 ACE BUSINESS SOLUTIONS, LLC, a Nevada limited liability company, | **CASE NO. 15-CV-1464 MMA NLS** |
| 10 | Hon. Michael M. Anello |
| 11 Plaintiff, | **AWESOME ENTERPRISES, LLC'S COUNTERCLAIMS AND** |
| 12 v. | **THIRD-PARTY CLAIMS AGAINST PLAINTIFFS-IN-INTERVENTION TDL GLOBAL** |
| 13 GLOBAL MARKETING & DEVELOPMENT, INC., *et al*, | **VENTURES, LLC AND LOSANY ENTERPRISES, LLC, AND** |
| 14 , | **THIRD-PARTY DEFENDANTS TODD LUBAR, MICHAEL** |
| 15 Defendants. | **GABOR, STEVEN ZELLER, AND CONSUMER BENEFITS** |
| 16 | **ALLIANCE, LLC FOR:** |
| 17 AWESOME ENTERPRISES, LLC, a Maryland limited liability company, | |
| 18 Counterclaimant and Third-Party Plaintiff, | **1. FRAUD** |
| 19 | **2. BREACH OF FIDUCIARY DUTIES** |
| 20 v. | **3. UNJUST ENRICHMENT** |
| 21 TDL GLOBAL VENTURES, LLC, a Maryland limited liability company; LOSANY ENTERPRISES, LLC, a Delaware limited liability company; | |
| 22 CONSUMER BENEFITS ALLIANCE, LLC, a California limited liability company; TODD LUBAR, an individual; | |
| 23 | |
| 24 MICHAEL GABOR, an individual; and STEVEN ZELLER, an individual, | |
| 25 | |
| 26 Counterdefendants and Third-Party Defendants. | |
| 27 | |
| 28 | |

---

1

AND OTHER RELATED
COUNTERCLAIMS

Defendant, Defendant-In-Intervention, Counterclaimant, and Third-Party Plaintiff Awesome Enterprises, LLC ("Awesome"), for its Counterclaims and Third-Party Claims against Plaintiffs-In-Intervention and Counterdefendants TDL Global Ventures, LLC ("TDL") and Losany Enterprises, LLC ("Losany"), and against Third-Party Defendants Todd Lubar, Michael Gabor, Steven Zeller, and Consumer Benefits Alliance, LLC, alleges as follows:

**PARTIES**

1.      Awesome is a limited liability company organized under the laws of the State of Maryland with its principal place of business in Hunt Valley, Maryland. Charles "Scott" Solomon, a resident and citizen of the State of Maryland, is the managing member of Awesome.

2.      TDL is a Maryland limited liability company with its principal place of business in Bethesda, Maryland.  Todd Lubar, a resident and citizen of Maryland, is the managing member of TDL.  Lubar is a convicted felon who served time in federal prison for money laundering related to the proceedings of criminal drug activity.

3.      Losany is a Delaware limited liability company with its principal place of business in Hunt Valley, Maryland.  Michael Gabor, upon information and belief a resident and citizen of Florida, is the managing member of Losany.

4.      Steven Zeller is a principal and managing member of at least two companies – (i) Consumer Benefits Alliance, LLC, ("CBA"), on information and belief a California limited liability company with its principal place of business in Sacramento, California; and (2) Prime, LLC, on information and belief a California

2

limited liability company with its principal place of business in San Diego, California.  Awesome alleges on information and belief that Zeller is a citizen of California and a part time resident of California and the Commonwealth of Puerto Rico.

## JURISDICTION

5.      Jurisdiction of this Counterclaim and Third-Party Complaint is founded upon 28 U.S.C. Sections 1332, 1335, and 1367.

## VENUE

6.      Pursuant to 28 U.S.C. Sections 1391(b)(2) and 1397, venue of this counterclaim and third-party complaint is proper in the United States District Court for the Southern District of California.

## FACTUAL BACKGROUND

7.      5 Star Management Services, Inc. ("5 Star") was a management entity servicing – in exchange for partial revenue streams – four separate companies involved in the business of providing debt validation services to consumers.  These four companies were Clearing Solutions, LLC ("Clearing") (owned by Stephen Fantl), Debt Defenses Services, LLC ("DDS") (owned by Charles "Scott" Solomon), Pure Solutions, Inc. ("Pure") (owned by Ramin Amirebrahimi), and Precision, Inc. ("Precision) (owned by Neil Bullock and Ryan Mack).[1]  5 Star was ultimately majority owned by Solomon and Fantl.  Awesome presently owns Clearing and DDS.  In May 2015, Defendant Global Marketing & Development, Inc. ("GMD") purported to enter into a transaction with 5 Star to transfer assets consisting of revenue streams, customers, accounts, affiliate contracts, certain

---

[1] Although the revenue stream of Precision is part of the funds that should have been deposited with the Court because rights to those funds are disputed, Interpleader Plaintiff ACE Business Solutions, LLC allowed Precision to remove its revenue stream from being processed by ACE.  Thus, although it should be part of the interpled funds, Precision's revenue stream appears to be solely under the control of Bullock and Mack.

intellectual property, and certain physical property related to the four companies to GMD. In exchange, GMD, through its principals David Glenwinkel and Craig Beling, agreed to:

      A.    Pay to 5 Star 19.3% percent of the gross revenue of GMD derived from revenues of the four companies, with a minimum monthly compensation of $360,000 for the first four months of the agreement.

      B.    Licensing fees of $150 per contract document used in the debt validation services business.

      C.    An additional royalty of 1 to 3 percent of gross income on future business income streams related to the four companies.

      D.    25 percent of the preferred shares of GMD.

      E.    A $1,000,000 cash liability reserve, from the cash on hand of 5 Star, to be increased to $2 million in 18 months.

A true and correct copy of the May 2015 agreement is attached hereto as Exhibit 1.

8.    Despite the purported transfer of the servicing rights and revenue streams to GMD, at all times actual ownership of the four companies remained with their original owners. Further, Awesome, Clearing, DDS, Solomon, and Fantl dispute that 5 Star even had the right to transfer on behalf of the four companies the servicing rights, revenue, streams and other property to GMD.

9.    GMD, Glenwinkel and Beling induced 5 Star and its principals to enter into the May 2015 agreement via rank fraud and deception. GMD, Glenwinkel and Beling never had any intention of performing any part of the Agreement. They promised to fulfill the terms of the agreement, take over the day-to-day management of the debt validation businesses, and "wash" the tax liabilities of the four companies in a tax scheme devised by David Glenwinkel. In fact, their actual plan and intention was to seize control of the revenue streams, assets, and

intellectual property of the four companies, loot the $1 million reserve, dump all consumer-related liabilities on 5 Star and the four companies, and otherwise gut the businesses of their value.  This is exactly what they did.  The purported GMD/5 Star Agreement is therefore void *ab initio*, for fraud, and should be rescinded.  It is further void, in the alternative, but 5 Star had no authority to transfer the rights and properties of the four companies to GMD.  In addition, GMD, Glenwinkel, and Beling are in breach of every provision of the Agreement.  Awesome, DDS, Clearing, 5 Star and its principals Solomon and Fantl are entitled to both damages and restitution from GMD and its principals, and to control of the entirety of the interpled funds, which are proceeds of the revenue streams of DDS, Clearing, and Pure.

10.     Lubar/TDL and Gabor/Losany have been permitted to intervene in this case.  In separate litigation in the District Court of Maryland (*Lubar v. Glenwinkel,* District of Maryland Case No. 15-cv-01738-GLR), Lubar/TDL and Gabor/Losany shockingly admitted in their complaints that GMD and Glenwinkel were acting as *their* agents when GMD and Glenwinkel moved to take control of the assets of the four companies.  True and correct copies of the original and amended complaints in the *Lubar v. Glenwinkel* action are attached hereto as Exhibits 2 and 3.  In effect, Lubar/TDL and Gabor/Losany admit they were participants in and architects of the fraud perpetrated by GMD and Glenwinkel, but were then "double-crossed" by Glenwinkel and cut out of receiving the fruits of the fraud.  GMD and Glenwinkel engaged in a "double double-cross."

11.     Among the allegations of the pleadings in the *Lubar v. Glenwinkel* which establish Lubar/TDL and Gabor/Losany's role in the scheme to defraud Awesome, 5 Star, Clearing, and DDS are:

A.      "Gabor and Lubar allowed Glenwinkel to negotiate with Solomon and Fantl on their behalf and acquire the rights to the management

contracts held by Five Star and licensing rights to the debt validation paperwork transferred by Solomon and Fantl."

      B.    "Beling confirmed to Gabor and Lubar that Glenwinkel was acquiring the rights from Solomon and Fantl in order to promote the business of Gabor and Lubar and to act as their representative."

      C.    "Gabor and Lubar reasonably relied on Glenwinkel's misrepresentations and allowed him to complete the transaction with Solomon and Fantl, believing that once the transaction was complete, they would receive the distributions and licensing rights."

      D.    "Glenwinkel proposed to Gabor, Amir and Lubar that he act as the purchaser of Five Star and own the management rights as a proxy for Gabor, Amir and Lubar.  The purchase would be funded from revenue generated by the business.  Glenwinkel's proposal was that he would receive one or two percent of the purchasing company (GMD) for providing big picture management and to compensate him for being the facilitator of the deal.  Gabor, Amir and Lubar would own collectively and equally the rights to ninety eight to ninety nine percent of the profit of the business that acquired Five Star (GMD)."

      E.    "Glenwinkel was brought into the negotiations with Solomon and Fantl because of his position as Gabor's asset protection advisor.  His initial capacity was purely to evaluate the transaction and to advise Gabor and Lubar and their entities Losany and TDL with regard to the most beneficial way for them to acquire the rights that Solomon and Fantl were transferring."

      F.    "Gabor, Amir and Lubar agreed to the proposal and through Glenwinkel, they entered into negotiations with Solomon and Fantl for the

acquisition.  Lubar and his staff prepared spreadsheets of the historical performance of the Company and projections of future performance."[2]

G.    "At all times, Glenwinkel intended to usurp the corporate opportunity brought to him by Gabor and Lubar and to 'cut' them out of the transaction."

H.    "Glenwinkel never intended to only receive 2-3% of the company and its distributions himself, but to control and keep all of it without giving any of it to Lubar/TDL or Gabor/Losany."

I.    "The representations made to Gabor and Losany by Glenwinkel and Beling that assured Gabor that if he allowed the Solomon/Fantl transaction to be completed that Losany would continue to receive the revenue it was receiving from Five Star for at least 6 months and that Gabor and Lubar could then start-up their own debt validation business, with the licensing of the paperwork Glenwinkel and Beling claimed they were acquiring from Solomon and Fantl, was false."

J.    "Glenwinkel, Beling and GMD's actions were intentionally fraudulent and malicious and as such, Plaintiffs are entitled to an award of punitive damages from Defendants."

K.    "On or about March 8, 2015, Glenwinkel, through GMD, and Lubar, through TDL, entered into a written agreement whereby TDL was to receive 25% ownership in GMD.  In addition, TDL would receive 20% of the revenue stream from the back book of business as a commission, a 45% activation fee for all new clients and a profit share (from the ownership interest) of 25%.  Lubar, individually, would receive 18% of the future revenue stream, $300,000 in annual compensation as an independent contractor and 7.5% of the profit as a Manager's bonus."

---

[2] Lubar and Gabor were being paid at the time from the revenues of the Awesome, and never informed Solomon or Fantl that they were preparing documents for Glenwinkel, or that Glenwinkel was acting as their agent.

L.    "Gabor would receive 25% of the revenues of GMD once the transaction with Five Star was completed.  Subsequent to reaching this agreement, telephone calls took place between Gabor and Glenwinkel and Beling in which Glenwinkel and Beling confirmed Gabor's 25% ownership in GMD."

M.    "To continue the ruse that Glenwinkel was facilitating this transfer from Solomon and Fantl to Lubar and Gabor, GMD then transferred to Losany $60,000 in the first two weeks after it started receiving the money in its account."

N.    "Similarly, Lubar received $13,000 in each of these same two weeks, which Glenwinkel said was to cover Lubar's expenses until they could reconcile the amount he was to receive under the March 8, 2015 agreement."

O.    "As the transaction with Solomon and Fantl was being finalized, on or about April 2, 2015, Glenwinkel and Beling traveled to Maryland to meet, unannounced, with Lubar.  Glenwinkel told Lubar that he had 'discovered' that it appeared Glenwinkel would not be able to insure GMD if Lubar was an owner, employee or in any other way affiliated with GMD due to legal issues Lubar had in the past."

P.    "Glenwinkel told Lubar that he would provide him with a separation package of $1 million.  Lubar was nervous for his financial future since he had put everything he had in this venture over the last few years.  He asked Glenwinkel to agree to pay him $1.5 million and to offer a similar package to Gabor so that they could start their own debt validation business."

Q.    "Gabor had several conversations and meetings with Beling and Gabor where he negotiated for payment of $60,000 per week for 25 weeks (6 months) -- a total sum of $1.5 million."  In fact GMD, on the authority of Glenwinkel, paid Lubar $250,000 of the funds received from 5 Star, Awesome, DDS, and Clearing.

R.    "Glenwinkel represented to Lubar and Gabor that he would pay each of them $1.5 million through GMD from moneys generated by the Five Star management agreements and that a portion of this money would be used to start up a new debt validation business run by Gabor and Lubar.  Glenwinkel represented he would receive the licensing rights to the debt validation paperwork from Solomon and Fantl and would, in turn, license it to this new business he was to form with Gabor and Lubar."

12.    GMD settled the *Lubar v. Glenwinkel* suit by purportedly assigning whatever rights GMD might have in the interpled funds to Lubar/TDL and Gabor/Losany.

13.    At no time prior to the admissions made by Lubar/TDL and Gabor/Losany in the Maryland action were Awesome, 5 Star, DDS, Clearing, Solomon, or Fantl aware that Lubar/TDL and Gabor/Losany participated in, initiated, and conspired with GMD and its principals to defraud 5 Star, DDS, Clearing, Solomon, or Fantl.

14.    GMD and Glenwinkel never informed Awesome, 5 Star, DDS, Clearing, Solomon, or Fantl that while GMD and Glenwinkel were negotiating with Awesome, 5 Star, DDS, Clearing, Solomon, or Fantl, GMD and Glenwinkel had another secret agreement with TDL/Lubar and Losany/Gabor.

15.    Lubar/TDL and Gabor/Losany received over $500,000 of the funds from Awesome, 5 Star, DDS and Clearing that were collected by GMD.  Lubar received two payments of $13,000.00, plus $250,000.00, plus had a loan owed by Lubar to Zeller in the amount of $180,000 paid off with the funds wrongfully taken by GMD from Awesome, 5 Star, DDS and Clearing.  Gabor was also paid $120,000 from those funds.

16.    According to the GMD Profit and Loss Statement obtained by Awesome, GMD transferred $180,000.00 of the funds it collected from Awesome,

5 Star, DDS and Clearing to Steve Zeller via his company Consumer Benefits Alliance, LLC, to pay off a loan owed by Todd Lubar. A true and correct copy of the Profit and Loss statement is attached hereto as Exhibit 4. A Release of Promissory Note was signed by Steve Zeller. A true and correct copy of this Release is attached hereto as Exhibit 5. Based on information and belief, it is alleged that the payment went directly to Zeller from GMD, instead of through Lubar who owed the funds to Zeller, so that Lubar would not receive a Form 1099 for the funds, allowing him to avoid claiming it on his tax returns. Lubar has over $1 million in tax liens against him.

17.     Awesome is informed and believes and on that basis alleges that a portion of the $1,000,000 reserve wrongful taken from Awesome, 5 Star, DDS, and Clearing was paid to Zeller, Lubar/TDL, and Gabor/Losany, instead of being preserved as required by the GMD/5 Star Agreement

## FIRST CLAIM FOR RELIEF

(Fraud Against TDL, Losany, Lubar, and Gabor)

18.     Awesome incorporates by reference the allegations of paragraphs 1 through 18 as if fully set forth herein.

19.     As set forth with specificity above, Lubar/TDL and Gabor/Losany made the following misrepresentations of material fact, and/or suppressed/failed to disclose material facts, in their dealings with Awesome, 5 Star, Clearing, DDS, Solomon and Fantl related to the GMD/5 Star transaction:

          A.     Lubar/TDL and Gabor/Losany failed to inform Awesome, 5 Star, Clearing, DDS, Solomon and Fantl that they had engaged Glenwinkel to represent their interests when Glenwinkel negotiated for the GMD/5 Star transaction.

          B.     Lubar/TDL and Gabor/Losany failed to inform Awesome, 5 Star, Clearing, DDS, Solomon and Fantl they received over $500,000 of the funds

GMD acquired through defrauding Awesome, 5 Star, Clearing, DDS, Solomon and Fantl as part of the scheme to loot 5 Star and the four debt validation businesses.

        C.      While being paid by 5 Star to be involved in the management of 5 Star operations, Lubar/TDL and Gabor/Losany were providing confidential documents to GMD and Glenwinkel, and actively working with Glenwinkel to participate in the fraudulent scheme to loot 5 Star and the four companies while never intending to perform any part of the GMD/5 Star agreement. This was never disclosed to Awesome, 5 Star, Clearing, DDS, Solomon and Fantl.

        20.     Lubar/TDL and Gabor/Losany's false statements, suppression of facts, and material omissions of fact were false, they knew them to be false when they made the statements and/or omissions, and they intended Awesome, 5 Star, Clearing, DDS, Solomon and Fantl to rely upon these material false statements and material factual omissions. Awesome, 5 Star, Clearing, DDS, Solomon and Fantl did in fact reasonably rely on these statements and omissions. As a direct and proximate result of Lubar/TDL and Gabor/Losany's material misrepresentations and suppression/omission of facts, the businesses of Awesome, 5 Star, Clearing, and DDS have been looted and destroyed. Awesome has suffered damages in an amount no less than $4.8 million. The material misrepresentations and suppression/omission of facts by of Lubar/TDL and Gabor/Losany were a substantial factor in causing these damages to Awesome.

        21.     The actions of Lubar/TDL and Gabor/Losany were perpetrated with and constitute oppression, fraud, and malice, entitling Awesome to punitive damages.

## SECOND CLAIM FOR RELIEF

(Breach of Fiduciary Duties Against Lubar/TDL and Gabor/Losany)

        22.     Awesome incorporates by reference the allegations of paragraphs 1 through 21 as if fully set forth herein.

11

23.     At the time Lubar/TDL and Gabor/Losany were actively conspiring with GMD and its principals to loot Awesome, 5 Star, DDS, and Clearing, and were also spreading material falsehoods and/or suppressing material facts to aid in that scheme, Lubar/TDL and Gabor/Losany were the agents of Awesome and 5 Star, and were in special relationship of trust with Awesome and 5 Star.  As a result of this special relationship of trust and of agency, a fiduciary relationship existed between Awesome and 5 Star on the one hand, and Lubar/TDL and Gabor/Losany on the other.

24.     As set forth above, Lubar/TDL and Gabor/Losany engaged in gross misconduct and self-dealing in conspiring with GMD and its principals to defraud Awesome, 5 Star, Clearing, DDS, Solomon and Fantl.  This was a breach of their fiduciary duties, in contravention of the interests of Awesome, 5 Star, Clearing, DDS, Solomon and Fantl.

25.     As a direct and proximate cause of their breach of fiduciary duties to Awesome, 5 Star, Clearing, DDS, Solomon and Fantl, Lubar/TDL and Gabor/Losany have caused damage in an amount no less than $4.8 million.

26.     The actions of Lubar/TDL and Gabor/Losany in breaching their fiduciary duties were perpetrated with and constitute oppression, fraud, and malice, entitling Awesome to punitive damages.

### THIRD CLAIM FOR RELIEF

(Unjust Enrichment against Zeller and CBA)

27.     Awesome incorporates by reference the allegations of paragraphs 1 through 26 as if fully set forth herein.

28.     As set forth above, Zeller and CBA unjustly and improperly received $180,000 from GMD, to discharge a loan made by Zeller and CBA to the Lubar/TDL entity "Legendary Investments, LLC."  The funds came from monies looted from Awesome, 5 Star, Clearing and DDS as a part of the fraudulent scheme

perpetrated by GMD, Glenwinkel, Beling, Lubar/TDL, and Gabor/Losany.

29.   It is unjust and improper for Zeller and CBA to retain the $180,000 in funds, and Zeller and CBA must return those funds to Awesome.

WHEREFORE, Awesome seeks judgment against TDL, Losany, Lubar, Gabor, Zeller, and CBA as follows:

1.   On the First and Second Claims for relief, at least $4.8 in compensatory damages and restitution, the exact amount to be proven at trial;

2.   On the First and Second Claims for Relief, punitive damages according to proof at trial;

3.   On the Third Claim for Relief, restitution in the amount of $180,000;

4.   Attorneys' fees according to proof at trial;

5.   Prejudgment interest according to proof at trial; and

6.   Such other and further relief as the Court deems just and proper.


DATED: May 22, 2017

**TRESSLER LLP**



By: */s/ Matthew C. Elstein*
MATTHEW C. ELSTEIN
Attorneys for Defendant
AWESOME ENTERPRISES, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBITS E-FILED SEPARATELY

1